IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| THONY BEAUBRUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-097 |
| | ) | |
| LIEUTENANT BRAY and OFFICER BENTLEY, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Riverbend Correctional Facility, filed this case pursuant to 42 U.S.C. § 1983 regarding events alleged to have taken place at Dodge State Prison ("DSP") in Chester, Georgia.  He is proceeding *pro se* and *in forma pauperis* ("IFP").

I.    SCREENING THE AMENDED COMPLAINT

    A.    **Procedural Background**

On January 9, 2023, the Court entered a Report and Recommendation ("R&R") recommending that Plaintiff's amended complaint, (doc. no. 12), be dismissed for failure to state a claim upon which relief may be granted, (doc. no. 17).  Plaintiff did not file objections and on February 3, 2023, United States District Judge Dudley H. Bowen, Jr., adopted the R&R and closed the case.  (Doc. nos. 21, 22.)  On February 16, 2023, Plaintiff filed objections, a motion for reconsideration, and a motion to amend.  (Doc. nos. 23-26.)

On March 13, 2023, Judge Bowen issued an Order finding Plaintiff asserted a failure to intervene claim against Defendants Bray and Bentley that had not been addressed in the R&R, and Plaintiff had not been given a reasonable opportunity to amend his pleadings to establish a deliberate indifference claim against the same two Defendants. (Doc. no. 27, p. 2.) Defendants DSP, Warden Tommy Bowen, and Counselor Bray were to remain dismissed. (Id. at 3.) Judge Bowen granted Plaintiff's motion for reconsideration, vacated in part the February 3rd Adoption Order, re-opened the case, and ordered Plaintiff to amend his complaint within twenty-one days of the date of the Order. (Id. at 5.) Plaintiff, however, did not submit a second amended complaint as ordered.

On April 18, 2023, the Court entered an R&R to screen Plaintiff's first amended complaint as to the claims against Defendants Bray and Bentley, recommending that Defendants be dismissed for failure to state a claim upon which relief may be granted and that the civil action be closed. (Doc. no. 28.) Plaintiff has now submitted his second amended complaint, (doc. no. 30), and in a simultaneously entered Order, the Court vacates the April 18th R&R. The purpose of this R&R is to screen Plaintiff's second amended complaint, (doc. no. 30), as to claims against Defendants Bray and Bentley.[1]

**B.     Factual Background**

Taking all Plaintiff's allegations against Defendants Bray and Bentley as true, as the Court must for purposes of the present screening, the facts are as follows. On June 13, 2022,

---

[1] Plaintiff also names Defendants DSP, Warden Tommy Bowen, and Counselor Bray in his second amended complaint and includes facts as to these Defendants. (Doc. no. 30, pp. 1-3.) The Court has already screened these same claims and dismissed them, and Judge Bowen expressly limited the second amended complaint to only claims against Defendants Bray and Bentley. (Doc. no. 27, p. 2.) Furthermore, Judge Bowen specifically limited the amended claims against Defendants Bray and Bentley to that "of deliberate indifference to a serious medical need and a failure to intervene claim." (Id. at 3.)

at approximately 7:30 P.M., while Plaintiff was housed in the A-3 dorm, an inmate attacked Plaintiff in the presence of Defendants Bray and Bentley. (Doc. no. 30, p. 5.) Defendants Bray and Bentley watched Plaintiff getting "beat up" and did not intervene. (Id. at 14, 15.) The A-3 dorm is a high-risk dorm filled with drugs, tobacco, and violent inmates. (Id. at 5, 16.) Prior to the assault, Plaintiff repeatedly requested to be moved to a safer dorm, but Defendant Bray denied his requests. (Id. at 4, 14, 16.)

Plaintiff suffered unspecified injuries to his head, knees, and arm. (Id. at 5, 14-15.) Immediately after the assault, Plaintiff requested permission to walk out of the dorm and into the medical department for treatment, but Defendants Bray and Bentley denied his request "due to lack of staff officers on duty" that day, even though they were aware of "how bad [Plaintiff] was hurt with head, knees, arm injuries." (Id. at 5.) Instead, they "required Plaintiff to put a medical request" and wait to be called out for examination. (Id.) Plaintiff waited for his call for an examination and received ibuprofen. (Id. at 17.)

Defendant Bray then took him "to the hole [and] isolated [him] for ten days" while Charles Stephens and Alexander Burke robbed his Capital One bank account of $67,000.00. (Id. at 14-15.) Plaintiff was isolated for ten days "for be[ing] a victim of robbery." (Id. at 20.) If Plaintiff had not been put in segregation, he would have known his account was breached. (Id. at 15-16.) "The hole" reached approximately 100 degrees. (Id. at 20.) Plaintiff requests compensatory, nominal, and punitive damages. (Id. at 17.)

II.     DISCUSSION

    A.     **Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief

3

from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However,

this liberal construction does not mean that the Court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff Fails to State a Valid Deliberate Medical Indifference Claim Against Defendants Bray and Bentley

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

Plaintiff fails to state a claim for three reasons. First, he offers no description of his injuries to discern whether the emergency treatment he demanded was necessary and so obvious that even a layperson would easily recognize the need for emergency care. Second, he does not allege Defendants denied him medical care altogether. Instead, he alleges the staffing shortages that day precluded Plaintiff from walking unannounced into the medical department. Moreover, Plaintiff discloses he was seen by medical after they received his request. The Defendants' decision to

5

make Plaintiff request medical care and wait his turn cannot constitute more than mere negligence in these circumstances. For these reasons, Plaintiff fails to state a claim against Defendants Bray and Bentley.

    **C.    Plaintiff Fails To State a Valid Failure to Protect or Intervene Claim Against Defendants Bray and Bentley**

A prison official may violate an inmate's Eight Amendment right by acting with 'deliberate indifference' to a substantial risk of serious harm or disregarding a such a risk. Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey,

6

376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34). To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Mere negligent failure to protect an inmate from an attack does not justify § 1983 liability. Brown, 894 F.2d at 1537. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Here, Plaintiff fails to allege facts that show Defendants acted with deliberate indifference by refusing his repeated requests to be moved out of the dorm before the assault occurred. Plaintiff does not allege a specific threat of violence made against him that

7

Defendants ignored. Instead, his pre-assault requests only asserted a generalized sense of fear and disappointment with the safety and conditions of the dorm. In the absence of specific threats against Plaintiff, his generalized fears and discontent with the dorm fail to state a claim for prevention of the assault.

Plaintiff also faults Defendants' reaction to the assault itself, alleging Defendants stood there watching the assault without intervening to protect him. A prison official can be liable under the Eighth Amendment for failing to take reasonable steps to protect a victim from an ongoing assault by another inmate. See Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (*per curiam*) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)). As explained by the Eleventh Circuit, liability for a failure to intervene claim may be imposed when: (1) another inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. See Johnson v. Boyd, 568 F. App'x 719, 724-25 (11th Cir. 2014) (*per curiam*). Plaintiff bears the burden of showing Defendants were in a position to intervene but did not do so. See Ledlow, 500 F. App'x at 914.

> The reasonable response requirement has been described as follows:
>
> "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. More succinctly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845. We have said that a prison official violates the Eighth Amendment if he responds to a known risk "in an objectively unreasonable manner." Cottone [v. Jenne], 326 F.3d 1352, 1358 (11th Cir. 2003). An official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." Hale [v. Tallapoosa Cty.,] 50 F.3d 1579, 1583 (11th Cir. 1995).

Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 619-20 (11th Cir. 2007).

As noted, for liability to attach, prison officials must have been "in a position to intervene." Terry, 376 F. App'x at 896 (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)).  An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." Smith v. Andrews, CV 114-206, 2016 WL 6818755, at *4 (S.D. Ga. Nov. 16, 2016) (collecting cases), *adopted by*, 2016 WL 7197446 (S.D. Ga. Dec. 9, 2016) (Hall, C.J.); Seals v. Marcus, No. 1:11-CV-99 WLS, 2013 WL 656873, at *7 (M.D. Ga. Jan. 25, 2013) (same), *adopted by*, 2013 WL 663579 (M.D. Ga. Feb. 22, 2013).

Plaintiff offers no facts to support a claim that Defendants were physically able to intervene, had a realistic chance to intervene, and could do so without unreasonably risking their own health and safety.  Plaintiff does not identify who attacked him, how many inmates attacked him, how long the attack lasted, whether the assailant(s) was armed, whether Defendants were armed, how close in distance Defendants were to the assault, and in what manner Defendants could have reasonably intervened without an unreasonable risk to their own health and safety.  Even if the assailant(s) was unarmed, "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." Seals, 2013 WL 656873, at *8 (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)); see also Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").  Indeed, there is no evidence Defendants knew Plaintiff could sustain severe injuries past the usually negligible injuries of an inmate-on-inmate fight.

For these reasons, Plaintiff fails to state a valid failure to protect or intervene claim against Defendants Bray and Bentley.

> **D.  Plaintiff Fails to State a Due Process Claim Against Defendants Bray and Bentley Regarding His Placement in Administrative Segregation**

In his amended complaint, Plaintiff asserts Defendant Bray did not allow him to go to medical and Plaintiff was then "placed [him] in administrative segregation for 10 days." (Doc. no. 12, p. 5.)  Plaintiff, however, does not identify who placed him in segregation.  (Id.)  In his second amended complaint, Plaintiff asserts Defendant Bray "refused [him] medical assistance" after the attack and instead took him "to the hole [and] isolated [him] for ten days" while Charles Stephens and Alexander Burke robbed his Capital One bank account of $67,000.00.  (Doc. no. 30, pp. 14-15.)  Plaintiff claims he was brought to "the hole" as "unusual punishment for be[ing] a victim of robbery."  (Id. at 20.)  However, in another section of the complaint, Plaintiff states, "even though the events unfolded in the presence of Defendant Lieutenant Bray and Officer Bentley, they still put Plaintiff Beaubrun in the hole."  (Id. at 8.)  While Plaintiff's allegations are inconsistent as to which Defendant placed him in segregation, it is the first time that Plaintiff has attributed his placement in segregation to either or both Defendants. (Id. at 8, 14-15.)  The Court recommends screening this claim for two reasons.

First, Plaintiff's administrative segregation claim against Defendants is outside the scope of Judge Bowen's March 13th Order, which limited Plaintiff's claims in his second amended complaint against Defendants Bray and Bentley only to those "of deliberate indifference to a serious medical need and a failure to intervene claim." (Doc. no. 27, p. 3.)

Second, Plaintiff fails to state a claim against Defendants Bray and Bentley for violation of either procedural or substantive due process rights.  With respect to procedural due process,

10

prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison).  However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation:  the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 486 (1995).  As Plaintiff has not alleged his placement in administrative segregation will extend the length of his incarceration, the Court turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating due process clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" (citation omitted)).  Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017).  To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL

11

1019910, at *7 (M.D. Ga. Mar. 9, 2015).  Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief.  See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff has not provided any information about the typical conditions at DSP, let alone alleged his conditions of confinement in administrative segregation pose an "atypical and significant hardship" on him.  See Gilyard, 2015 WL 1019910, at *6-7 (dismissing due process claim where the plaintiff made little or no mention of conditions of prisoners not in administrative segregation, thereby failing to establish protected liberty interest); Watkins v. Humphrey, Nos. 5:12-CV-97 and 5:12-CV-118, 2014 WL 6998102, at *1-2 (M.D. Ga. Dec. 10, 2014) (dismissing due process claim where the plaintiff failed to provide facts comparing his conditions of confinement differed from those in the general population).  Accordingly, Plaintiff fails to state a claim against Defendants.

Plaintiff does not appear to allege a substantive due process claim either, however, in an abundance of caution, the Court will address any such potential claim.  The parameters of substantive due process have been succinctly summarized as follows:

> Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citing Moore v. East Cleveland, 431 U.S. 494, 503 (1977)).  Substantive due process differs from procedural due process in that "a violation of a substantive due process right . . . is complete when it occurs." McK[i]nney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994).  Pursuant to Sandin, [t]he Due Process Clause standing alone confers no liberty interest in freedom from state action "taken 'within the sentence imposed.'"  515 U.S. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  Meaning, "the Constitution itself does not give rise to a liberty interest

in avoiding transfer to more adverse conditions of confinement. Wilkinson, 545 U.S. at 221 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).

Hill, 2016 WL 7972197, at *7. As discussed in detail above, Plaintiff has not alleged conditions in administrative segregation that constitute an atypical and significant hardship, and thus no constitutionally protected liberty interest is implicated. Accordingly, Plaintiff fails to state a substantive or procedural due process claim against Defendants. See Smith v. Deemer, 641 F. App'x 865, 868-69 (11th Cir. 2016).

### E. Plaintiff's Official Capacity Monetary Claims

Plaintiff states he is suing Defendants in only their official capacities. (Doc. no. 30, pp. 2-3.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendants for monetary relief fail as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's second amended complaint against Defendants Bray and Bentley be **DISMISSED** for failure to state a claim upon which relief may be granted. Because all other Defendants in this case have been dismissed, the Court **REPORTS** and **RECOMMENDS** that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 18th day of May, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

13